Zachariah Larson, Esq. (NV Bar No. 7787)
Shara Larson, Esq. (NV Bar No. 7786)
LARSON & STEPHENS
810 S. Casino Center Blvd., Ste. 104
Las Vegas, NV 89101
Telephone: 702/382.1170
Facsimile: 702/382.1169
Email: zlarson@lslawnv.com
Proposed Attorneys for Debtors and
Debtors in Possession

E-Filed on: 2-24-2011

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEVADA

In re:

NICK3, LLC,

                Debtor

NASDAQ5, LLC,

                Debtor

ALEC4, LLC,

                Debtor

Affects:

☒ All Debtors
☐ Affects the following Debtor(s)

Case No.: BK-S-11-11249-BAM
(Jointly Administered with Case No.:
BK-S-11-11252-BAM, BK-S-11-11253-BAM)

Chapter 11

Hearing Date: 3-29-2011
Hearing Time: 10:00 AM
Courtroom 3

**DECLARATION OF MICHAEL SUMIYOSHI IN SUPPORT OF APPLICATION TO EMPLOY SOUTHWESTERN MANAGEMENT AND REALTY TEAM AS PROPERTY MANAGEMENT COMPANY FOR DEBTOR AND DEBTOR-IN-POSSESSION**

I, Michael Sumiyoshi, hereby declare as follows;

1.    I am over the age of 18 and mentally competent. I have personal knowledge of the facts recited herein, and I am competent to testify regarding them if called as a witness in this matter. I am the current Property Manager with Southwestern Management and Realty Team responsible for management and leasing of Debtor's commercial buildings located at 4631 Spring Mountain Rd., Las Vegas, Nevada and 4480 Spring Mountain Road, Las Vegas, Nevada.

2.    I make this Declaration in support of the Application to Employ Southwestern

SIDHU LAW FIRM, LLC
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101
TEL: (702) 384-4436    FAX: (702) 384-4437

1  Management and Realty Team ("Motion").

2      3.      Southwestern Management and Realty Team ("SMRT") does not have any

3  connections with the United State Trustee or any persons employed in the Office of the United

4  States Trustee.

5      5.      Except as set forth below, SMRT and its Director, insofar as I have been able to

6  ascertain, do not have any present connection with the Debtor, Debtor's creditors or other

7  parties-in-interest. To the best of my knowledge, SMRT and its Director do not hold or represent

8  any interest adverse to the Debtor's bankruptcy estate, and SMRT and its Director are

9  disinterested within the meaning of 11 U.S.C. §101(14). Additionally, SMRT does not service

10  any affiliate of any of the Debtor.

11     6.      SMRT's contracted services to the Debtor are to manage, lease, evict, collect

12  rents and pay all ongoing operating expenses associated with the management of the property as

13  outlined in the Property Management Agreements, attached as Exhibit "1" and "2" to the

14  Application.

15     7.      Except as may be disclosed herein, and to the best of my knowledge, information

16  and belief, SMRT is "disinterested" within the meaning of Section 101(4) of the Bankruptcy

17  Code in that SMRT its Directors, counsel and associates:

18          (a)      Are not creditors or insiders of Debtor;

19          (b)      Are not and were not, within two years before the date of this application,

20  a director, officer, or employee of Debtor as specified in subparagraph (c) of 11 U.S.C. §101 (4);

21  and

22          (c)      Do not have an interest materially adverse to the interest of the estate or of

23  any class of creditors or equity holders.

24     9.  Subject to Court approval, in accordance with 11 U.S.C. §330, the Debtor seeks to

25  retain SMRT on an monthly basis at the customary and standard rates that SMRT charges for

26  similar work, plus reimbursement of actual and necessary expenses that does not fit the scope of

27  the property management agreement.

28  ///

SIDHU LAW FIRM, LLC
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101
TEL.: (702) 384-4436    FAX: (702) 384-4437

10.    The rate of SMRT is 4% fee for management and 3% fee for renting or leasing as outlined in the Property Management Agreements attached as Exhibit "1" and "2" to the Application. It is anticipated that SMRT will work with the Debtor and Debtor-in-Possession.

11. SMRT has not agreed to share any compensation with anyone.

12. SMRT is not a creditor of the Debtor.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

DATED: February 23, 2011.

MICHAEL SUMIYOSHI

SIDHU LAW FIRM, LLC
810 S. Casino Center Blvd., Suite 104
Las Vegas, Nevada 89101
TEL: (702) 384-4436    FAX: (702) 384-4437

3

# EXHIBIT "1"



# ADDENDUM

This Addendum modifies the Residential Property Management Agreement entered into on

October 1, 2007, with Realty 7, LLC, for management of the real property located at

4631 Spring Mountain Road, Las Vegas, NV 89146

1. Realty 7, LLC has assigned and transferred the Residential Property Management Agreement to Southwestern Management and Realty Team ( hereinafter referred to as "SMART".

2. The Broker for Smart is Mark A. Hall, 2620 Regatta Drive, Suite 102, Las Vegas, Nevada 89128. Email is markhall@managevegas.com. Fax number is 702-925-8754.

3. The Owner authorizes transferring the Owner's Maintenance and Repair Reserve deposit, if any, held in a Realty 7, LLC trust account to a similar SMART trust account.

4. A new Residential Property Management Agreement will be prepared for execution at the expiration of the current agreemet in the new management company name.

Effective, this the 16th day of March , 2009.

Marvin "Bud" Gibbs, Broker
Realty 7, LLC
Nevada Broker License # 26301

Owner Signature

<u>Nick 3, LLC</u>
Printed

Mark A. Hall, Broker
Southwestern Management and Realty Team
Nevada Broker License # 42782

Owner Signature

<u>Dr. Leon Chen, Managing Member</u>
Printed



# MANAGEMENT AGREEMENT

## FOR PROPERTY LOCATED AT: 4631 SPRING MOUNTAIN RD., LAS VEGAS NV, 89102

Section 1    Appointment of Managing Agent    2
  1.1  Appointment and Acceptance    2
  1.2  Description of Premises    2
  1.3  Term    2
Section 2    Bank Accounts
  2.1  Operating (and/or) Reserve Accounts    2
    (a) Initial Dep. & Contingency Reserve    2
  2.2  Security Deposit Account    2
  2.3  Fidelity Bond    2
Section 3    Collection of Rents and Other Receipts    2
  3.1  Agent's Authority    2
  3.2  Special Charges    2
  3.3  Security Deposits    2
Section 4    Disbursements from Operating (and/or) Reserve Account(s)    3
  4.1  Operating Expenses    3
  4.2  Net Proceeds    3
Section 5    Agent Not Required to Advance Funds    3
Section 6    Financial and Other Reports    3
  6.1  Owner's Right to Audit    3
Section 7    Advertising    3
Section 8    Leasing and Renting    3
  8.1  Agent's Authority to Lease Premises    3
  8.2  No Other Rental Agent    3
  8.3  Rental Rates    3
  8.4  Enforcement of Leases Section    3
Section 9    Employees    4
  9.1  Agent's Authority to Hire    4
  9.2  Owner Pays Employee Expenses    4
  9.3  Agent's Authority to File Returns    4
  9.4  Workers' Compensation Insurance    4
  9.5  Hold Harmless, Labor Laws    4
Section 10   Maintenance & Repair    4
  10.1 Approval for Exceptional Maintenance Expense    4
Section 11   Contracts, Utilities and Services    4

Section 12   Relationship of Agent to Owner    4
Section 13   Save Harmless    4
Section 14   Liability Insurance    4
Section 15   Agent Assumes No Liability    5
Section 16   Owner Responsible for All Expenses of Litigation    5
  16.1 Fees for Legal Advice    5
Section 17   Agent's Compensation and Expenses    5
  17.1 For Management Services    5
  17.2 For Apartment Leasing    5
  17.3 For Commercial Leasing    5
  17.4 For Modernization (Rehabilitation and/or Construction)    5
  17.5 For Fire Restoration    5
  17.6 For Other Items of Mutual Agreement    5
Section 18   Representations    5
Section 19   Structural Changes    6
Section 20   Building Compliance    6
Section 21   Termination    6
  21.1 Termination by Either Party    6
  21.2 Termination for Cause    6
    (a) Breach of Agreement    6
    (b) Failure to Act, Etc.    6
    (c) Excessive Damage    6
    (d) Inadequate Insurance    6
  21.3 Termination Compensation    6
  21.4 Owner Responsible for Payments    6
Section 22   Indemnification Survives Termination    7
Section 23   Headings    7
Section 24   Force Majeur    7
Section 25   Complete Agreement    7
Section 26   Rights Cumulative; No Waiver    7
Section 27   Applicable Law and Partial Invalidity    7
Section 28   Notices    7
Section 29   Agreement Binding Upon Successors and Assigns    7

This agreement is made this ___ 1st ___ day of ___ October ___ , 2007, by and between

NICK 3, LLC (the "Owner(s)") and REALTY 7 (the "Agent").

# Section 1 APPOINTMENT OF MANAGING AGENT

## 1.1 APPOINTMENT AND ACCEPTANCE

Owner hereby appoints Agent as sole and exclusive Agent of Owner to lease and manage the property described in paragraph 1.2 upon the terms and conditions provided herein. Agent accepts the appointment and agrees to furnish the services of its organization for the leasing and management of the Premises; and Owner agrees to pay all expenses in connection with those services.

## 1.2 DESCRIPTION OF PREMISES

The property to be managed by Agent under this Agreement (the "Premises") is known as NICK 3, LLC , located at 4631 Spring Mountain Rd, Las Vegas NV 89109 ,Consisting of the land, buildings, and other improvements described as in the State of Nevada.

## 1.3 TERM

The Term of this Agreement shall be for an initial period of ___ 1 ___ years (the "initial term") from the ___ 1st ___ day of October, 2007 to and including the ___ 30th ___ day of September, 2008, and thereafter shall be automatically renewed from year to year unless terminated as provided in sections 21 or 27 herein. Each of said one-year renewal periods is referred to as a "term year".

# Section 2 BANK ACCOUNTS

The various bank accounts established under this Agreement shall at all times be established under Realty 7 LLC, and in Agent's control. Agent's designees shall be the only parties authorized to draw upon such accounts. No amounts deposited in any accounts established under this Agreement shall in any event be commingled with any other funds of Agent in accordance to Nevada Real Estate laws.

## 2.1 OPERATING (AND/OR) RESERVE ACCOUNT(S)

Agent shall establish a separate account(s) known as the REALTY 7 LLC, TRUST ACCOUNT, separate and apart from Agent's corporate accounts, for the deposit of receipts collected as described herein, in a bank or other institution whose deposits are insured by the federal government. Such depository shall be selected by the Agent. However, Agent shall not be held liable in the event of bankruptcy or failure of a depository. Funds in the Operating (and/or) Reserve Account(s) remain the property of Owner subject to disbursement of expenses by Agent as described in this Agreement.

(a) Initial Deposit and Contingency Reserve. -Immediately upon commencement of this Agreement, Owner shall remit to Agent the sum of $1,000.00 to be deposited in the Operating (and/or) Reserve Account(s) as an initial deposit representing the estimated disbursements to be made in the first month following the commencement of this Agreement, plus an additional sum of $0.00 as a contingency reserve. Owner agrees to maintain the contingency reserve stated above at all times in the Operating (and/or) Reserve Account(s) to enable Agent to pay the obligations of Owner under this Agreement as they become due. Owner and Agent shall review the amount of the contingency reserve from time to time and shall agree in writing on a new contingency reserve amount when such is required.

## 2.2 SECURITY DEPOSIT ACCOUNT.

Agent shall maintain a separate account known as the REALTY 7 LLC, TRUST SECURITY DEPOSIT ACCOUNT, for tenant security deposits and advance rentals. No amounts deposited in any accounts established under this Agreement shall in any event be commingled with any other funds of Agent in accordance to Nevada Real Estate laws.

## 2.3 FIDELITY BOND.

Agent shall cause all personnel who handle or are responsible for the safekeeping of any monies of Owner to be covered by a fidelity bond in the amount of $ NA with a company determined by Agent. Such bond shall be secured at Owner's expense. If a fidelity bond cannot be obtained, an arrest and conviction bond shall be obtained at Owner's expense. Owner shall save Agent harmless from any loss or damages caused by such personnel if no bond can be obtained.

2

## Section 3 COLLECTION OF RENTS AND OTHER RECEIPTS

### 3.1 AGENT'S AUTHORITY

Agent shall collect (and give receipts for, if necessary) all rents, charges and other amounts receivable on Owner's account in connection with the management and operation of the Premises. Such receipts (except tenants' security deposits and advance rentals, which shall be handled as specified in paragraphs 2.2 and 3.3 hereof, and special charges, which shall be handled as specified in paragraph 3.2 hereof) shall be deposited in the Operating (and/or) Reserve Account(s) maintained by Agent for the Premises.

### 3.2 SPECIAL CHARGES

If permitted by applicable law, Agent may collect from tenants any or all the following: and administrative charge for late payment of rent, a charge for returned or non-negotiable checks, a credit report fee, and administrative charge and/or broker's commission for subleasing.

### 3.3 SECURITY DEPOSITS

Agent shall collect, deposit, and disburse tenants' security deposits in accordance with the terms of each tenant's lease. Agent shall comply with all applicable state or local laws concerning the responsibility for security deposits and interest, if any.

## Section 4 DISBURSEMENTS FROM OPERATING (AND/OR) RESERVE ACCOUNT(S)

### 4.1 OPERATING EXPENSES

From the Operating (and/or) Reserve Account(s), Agent is hereby authorized to pay or reimburse itself for all expenses and costs of operating the Premises and for all other sums due Agent under this Agreement, including Agent's compensation under section 17.

### 4.2 NET PROCEEDS

To the extent that funds are available, and after maintaining the cash contingency reserve amount as specified in paragraph 2.1, Agent shall transmit cash balances to Owner periodically, as follows: **NICK 3, LLC** Such periodic cash balances shall be remitted to the following person(s), in the percentage(s) specified, and at the address(es) shown:

| Name | Percentage | Address |
|------|------------|---------|
| NICK 3, LLC | 100% | 6170 W. Desert Inn Road, Las Vegas NV 89146 |
|  |  |  |
|  |  |  |
|  |  |  |

## Section 5 AGENT NOT REQUIRED TO ADVANCE FUNDS

In the event that the balance in the Operating (and/or) Reserve Account(s) is at any time insufficient to pay disbursements due and payable under paragraphs 4.1 and 4.2 above, Owner shall, immediately upon notice, remit to Agent sufficient funds to cover the deficiency and replenish the contingency reserve. In no event shall Agent be required to use its own funds to pay such disbursements. Nor shall Agent be required to advance any monies to Owner, to the Security Deposit Account, or to the Operating (and/or) Reserve Account(s).

If Agent elects to advance any money in connection with the Premises to pay any expenses for Owner, such advance shall be considered a loan subject to repayment with interest, and Owner hereby agrees to reimburse Agent, including interest to be agreed upon by Owner(s) and Agent and hereby authorizes Agent to deduct such amounts from any monies due Owner.

3

## Section 6 FINANCIAL AND OTHER REPORTS

By the    10    day of each month, Agent shall furnish Owner with a statement of cash receipts and disbursements from the operation of the Premises during the previous month.  In addition, Agent shall, on a mutually acceptable schedule, prepare and submit to Owner such other reports as are agreed on by both parties.

### 6.1  OWNER'S RIGHT TO AUDIT

Owner shall have the right to request periodic audits of all applicable accounts managed by Agent, and the cost of such audit(s) shall be paid by Owner.

## Section 7 ADVERTISING

Agent is authorized to advertise the Premises or portions thereof for rent, using periodicals, signs, plans, brochures, or displays, or such other means as Agent may deem proper and advisable.  Agent is authorized to place signs on the Premises advertising the Premises for rent, provided such signs comply with applicable laws.  The cost of such advertising shall be paid out of the Operating (and/or) Reserve Account(s).  All advertising shall make clear that Agent is the manager and NOT the Owner of the Premises.  Newspaper ads that share space with other properties managed by the Agent shall be prorated based on cost.

## Section 8  LEASING AND RENTING

### 8.1 AGENT'S AUTHORITY TO LEASE PREMISES
Owner shall approve all leases, new & renewals.

### 8.2  OTHER RENTAL AGENT
During the term of this Agreement, Owner shall authorize any other person, firm, or corporation to negotiate or act as leasing or rental agent with respect to any leases for space in the Premises.

### 8.3  RENTAL RATES
Agent is authorized to establish and change or revise all rents, fees, or deposits, and any other charges chargeable with respect to the Premises with the approval of the Owner.

### 8.4  ENFORCEMENT OF LEASES
Agent is authorized to institute, in Owner's name, all legal actions or proceedings for the enforcement of any lease term, for the collection of rent or other income from the Premises, or for the evicting or dispossessing of tenants or other persons from the Premises.  Agent is authorized, when expedient, to settle, compromise, and release such legal actions or suits or reinstate such tenancies.  Any monies for such settlements paid out by Agent shall not exceed $ 0.00  without prior approval by Owner.  Attorney's fees, filing fees, court costs, and other necessary expenses incurred in connection with such actions and not recovered from tenants shall be paid out of the Operating (and/or) Reserve Account(s) or reimbursed directly to Agent by Owner.  Agent may select the attorney of its choice to handle such litigation.

## Section 9  EMPLOYEES

### 9.1  AGENT'S AUTHORITY TO HIRE
Personnel for Premises with Owner's consent only.
### 9.2  OWNER PAYS EMPLOYEE EXPENSES
Only with Owner's consent.
### 9.3  AGENT'S AUTHORITY TO FILE RETURNS
Agent shall do and perform all acts required of an employer with respect to the Premises and shall execute and file all tax and other returns required under the applicable federal, state, and local laws, regulations, and/or ordinances governing employment, and all other statements and reports pertaining to labor employed in connection with the Premises and under any similar federal or state law now or hereafter in force.  In connection with such filings, Owner shall upon request promptly execute and deliver to Agent all necessary powers of attorney, notices of appointment, and the like.  Owner shall be responsible for all amounts required to be paid under the foregoing laws, and Agent shall pay the same from the Operating (and/or) Reserve Account(s).

4

### 9.4 WORKER'S COMPENSATION INSURANCE

Agent shall, at Owner's expense, maintain workers' compensation insurance covering all liability of the employer under established workers' compensation laws.

### 9.5 HOLD HARMLESS, LABOR LAWS

Agent shall be responsible for compliance with all applicable state or federal labor laws. Owner shall indemnify, defend, and save Agent harmless from all claims, investigations, and suits, or from Owner's actions or failures to act with respect to any alleged or actual violation of state or federal labor laws. Owner's obligation with respect to such violation(s) shall include payment of all settlements, judgments, damages, liquidated damages, penalties, forfeitures, back pay awards, court costs, litigation expenses, and attorney's fees.

## Section 10 MAINTENANCE AND REPAIR

Agent is authorized with Owners' consent only, to make or cause to be made, through contracted services or otherwise, all ordinary repair and replacements reasonably necessary to preserve the Premises in its present condition and for the operating efficiency of the Premises, and all alterations required to comply with lease requirements, governmental regulations, or insurance requirements. Agent is also authorized to decorate the Premises and to purchase or rent, on Owner's behalf, all equipment, tools, appliances, materials, supplies, uniforms, and other items necessary for the management, maintenance or operation of the Premises. Such maintenance and decorating expenses shall be paid out of the Operating (and/or) Reserve Account(s). This section applies except where decorating and/or maintenance are at tenants' expense as stipulated in a lease.

### 10.1 APPROVAL FOR EXCEPTIONAL MAINTENANCE EXPENSE

The expense to be incurred for any one item of maintenance, alteration, refurbishing, or repair shall not exceed the sum of $1,000.00, unless such expense is specifically authorized by Owner, or is incurred under such circumstances as Agent shall reasonably deem to be an emergency. In an emergency where repairs are immediately necessary for the preservation and safety of the Premises, or to avoid the suspension of any essential service to the Premises, or to avoid danger to life or property, or the comply with federal, state, or local law, such emergency repairs shall be made by Agent at Owner's expense without prior approval.

## Section 11 CONTRACTS, UTILITIES AND SERVICES

Agent is authorized to negotiate contracts for nonrecurring items of expense, not to exceed $1,000.00, unless approved by Owner, and to enter into agreements in Owner's name for all necessary repairs, maintenance, minor alterations, and utility services. Agent shall, in Owner's name and at Owner's expense, make contracts on Owner's behalf for electricity, gas, telephone, fuel, or water, and such other services as Agent shall deem necessary or prudent for the operation of the Premises. All utility deposits shall be the Owner's responsibility, except that Agent may pay same from the Operation (and/or) Reserve Account(s) at Owner's request.

## Section 12 RELATIONSHIP OF AGENT TO OWNER

The relationship of the parties to this Agreement shall be that of Principal and Agent, and all duties to be performed by Agent under this Agreement shall be for and on behalf of Owner, in Owner's name, and for Owner's account. In taking any action under this Agreement, Agent shall be acting only as Agent for Owner, and nothing in this Agreement shall be construed as creating a partnership, joint venture, or any other relationship between the parties to this Agreement except that of Principal and Agent; or as requiring Agent to bear any portion of losses arising out of or connected with the ownership or operation of the Premises. Nor shall Agent at any time during the period of this Agreement be considered a direct employee of Owner. Neither party shall have the power to bind or obligate the other except as expressly set forth in this Agreement, except that Agent is authorized to act with such additional authority and power as may be necessary to carry out the spirit and intent of the Agreement.

## Section 13 SAVE HARMLESS

Owner shall indemnify, defend, and save Agent harmless from all loss, damage, cost, expense (including attorneys fees), liability, or claims for personal injury or property damage incurred or occurring in, on or about the Premises.

5.

## Section 14: LIABILITY INSURANCE

Owner shall obtain and keep in force adequate insurance against physical damage (e.g. fire with extended coverage endorsement, boiler and machinery, etc.) and against liability for loss, damage, or injury to property or persons which might arise out of the occupancy, management, operation, or maintenance of the Premises. The amounts and types of insurance shall be acceptable to both Owner and Agent, and any deductible required under such insurance policies shall be Owner's expense. Agent shall be covered as an additional insured on all liability insurance maintained with respect to the Premises. Liability insurance shall be adequate to protect the interests of both Owner and Agent and in form, substance, and amounts reasonable satisfactory to Agent. Owner agrees to furnish Agent with certificates evidencing such insurance or with duplicate copies of such policies within 10 days of the execution of this Agreement. If Owner fails to do so, Agent may, but shall not be obligated to, place said insurance and charge the costs thereof to the Operating (and/or) Reserve Account(s). Said policies shall provide that notice of default or cancellation shall be sent to Agent as well as Owner and shall require a minimum of 30 days' written notice to Agent before any cancellation of or changes to said policies.

## Section 15: AGENT ASSUMES NO LIABILITY

Agent assumes no liability whatsoever for any acts or omissions of Owner, or any previous owners of the Premises, or any previous management or other agent of either. Agent assumes no liability for any failure of or default by any tenant in the payment of any rent or other charges due Owner or in the performance of any obligations owed by any tenant to Owner pursuant to any lease or otherwise. Nor does Agent assume any liability for previously unknown violations of environmental or other regulations which may become known during the period this Agreement is in effect. Any such regulatory violations or hazards discovered by Agent shall be brought to the attention of Owner in writing, and Owner shall promptly cure them.

## Section 16: OWNER RESPONSIBLE FOR ALL EXPENSES OF LITIGATION

Owner shall pay all expenses incurred by Agent, including, but not limited to, reasonable attorneys' fees and Agent's costs and time, and any liability, fines, penalties or the like, in connection with any claim, proceeding, or suit involving an alleged violation by Agent or Owner, or both, of any law pertaining to fair employment, fair credit reporting, environmental protection, rent control, taxes, or fair housing, including, but not limited to, any law prohibiting or making illegal discrimination on the basis of race, sex, creed, color, religion, national origin, or mental or physical handicap, provided, however, that Owner shall not be responsible to Agent for any such expenses in the event Agent is finally adjudged to have personally, and not in a representative capacity, violated any such law. Nothing contained in this Agreement shall obligate Agent to employ legal counsel to represent Owner in any such proceeding or suit.

### 16.1 FEES FOR LEGAL ADVICE

Owner shall pay reasonable expenses incurred by Agent in obtaining legal advice regarding compliance with any law affecting the Premises or activities related to them. If such expenditure also benefits others for whom Agent in the Agreement acts in a similar capacity, Owner agrees to pay an apportioned amount of such expense.

## Section 17: AGENT'S COMPENSATION AND EXPENSES

As compensation for the services provided by Agent under this Agreement (and exclusive of reimbursement of expenses to which Agent is entitled hereunder), Owner shall pay Agent as follows:

### 17.1 FOR MANAGEMENT SERVICES

_____% of the total monthly gross receipts from the Premises. Payments due Agent for periods of less than an calendar month shall be prorated over the number of days for which compensation is due. The percentage amount set forth above shall be based upon the total gross receipts from the Premises during the preceding month.

The term "gross receipts" shall be deemed to include all rents and other income and charges from the normal operation of the Premises, including, but not limited to, rents, parking fees, forfeited security deposits, other fees and deposits, and other miscellaneous income. Gross receipts shall NOT be deemed to include the special charges listed in paragraph 3.2, or income arising out of the sale of real property or the settlement of fire or other casualty losses and items of a similar nature.

6

## Section 18. REPRESENTATIONS

Owner represents and warrants: That Owner has full power and authority to enter this Agreement; that there are no written or oral agreements affecting the Premises other than tenant leases, copies of which have been furnished to Agent; that there are no recorded easements, restrictions, reservations, or rights of way which adversely affect the use of the Premises for the purposes intended under this agreement; that to the best of Owner's knowledge, the property is zoned for the intended use; that all leasing and other permits for the operation of the Premises have been secured and are current; that the building and its construction and operation do not violate any applicable statutes, laws, ordinances, rules, regulations, orders, or the like (including, but not limited to, those pertaining to hazardous or toxic substances); that the building does not contain any asbestos, urea, formaldehyde, radon, or other toxic substance; and that no unsafe condition exists.

## Section 19. STRUCTURAL CHANGES

Owner expressly withholds from Agent any power or authority to make any structural changes in any building, or to make any other major alterations or additions in or to any such building or to any equipment in any such building, or to incur any expense chargeable to Owner other than expenses related to exercising the express powers vested in Agent through this Agreement, without the prior written consent of the following person:

NICK 3. LLC                                         6170 W. Desert Inn Road, Las Vegas NV 89146
Name                                                Address

However, such emergency repairs as may be required because of danger to life or property, or which are immediately necessary for the preservation and safety of the Premises of the safety of the tenants and occupants thereof, or required to avoid the suspension of any necessary service to the Premises; or to comply with the applicable federal, state, or local laws, regulations, or ordinances, shall be authorized pursuant to paragraph 10.1 of this Agreement, and Agent shall notify Owner appropriately.

## Section 20. BUILDING COMPLIANCE

Agent does not assume and is given no responsibility for compliance of the Premises or any building thereon or any equipment therein with the requirements of any building codes or with any statute, ordinance, law or regulation of any governmental body or of any public authority or official thereof having jurisdiction, except to notify Owner promptly or forward to Owner promptly and complaints, warnings, notices, or summonses received by Agent relating to such matters. Owner represents that to the best of Owner's knowledge the Premises and all such equipment comply with all such requirements, and Owner authorizes Agent to disclose the ownership of the Premises to any such officials and agrees to indemnify and hold Agent, its representatives, servants, and employees, harmless of and from all loss, cost, expense, and liability whatsoever which may be imposed by reason of any present or future violation or alleged violation of such laws, ordinances, statutes, or regulations.

## Section 21. TERMINATION

### 21.1 TERMINATION BY EITHER PARTY

This Agreement may be terminated by either Owner or Agent with or without cause within (30) days upon written notice by either party.

### 21.2. TERMINATION FOR CAUSE

Notwithstanding the foregoing, this Agreement shall terminate in any event, and all obligations of the parties hereunder shall cease (except as to liabilities of obligations which have accrued or arisen prior to such termination, or which accrue pursuant to paragraph 21.3 as a result of such termination, and obligations to insure and indemnify), upon the occurrence of any of the following events:

(a) Breach of Agreement. Thirty (30) days after the receipt of notice by either party to the other specifying in detail a material breach of this Agreement, if such breach has not been cured within said thirty (30) day period; or if such breach is of a nature that it cannot be cured within said thirty (30) day period but can be cured within a reasonable time thereafter, if efforts to cure such breach have not commenced or/and such efforts are not proceeding and being continued diligently both during and after such thirty (30) day period prior to the breach being cure. HOWEVER, the breach of any obligation of either party hereunder to pay any monies to the other party under the terms of this Agreement shall be deemed to be curable within thirty (30) days.

(b) Failure to Act, Etc. In the event that any insurance required of Owner is not maintained without any lapse, or it

7.

is alleged or charged that the Premises, or any portion thereof, or any act or failure to act by Owner, its agent and employees with respect to the Premises, fails to comply with any law or regulation, or any order or ruling of any public authority, and Agent, in its sole discretion, considers that the action or position of Owner or its representatives with respect thereto may result in damage or liability to Agent, or disciplinary proceeding with respect to Agent's license, Agent shall have the right to terminate this Agreement at any time by written notice to Owner of its election to do so, which termination shall be effective upon the service of such notice. Such termination shall not release the indemnities of Owner set forth herein.

(c) Excessive Damage - Upon the destruction of or substantial damage to the Premises by any cause, or the taking of all or a substantial portion of the Premises by eminent domain, in either case making it impossible or impractical to continue operation of the Premises.

(c) Inadequate Insurance - If Agent deems that the liability insurance obtained by Owner per Section 14 is not reasonably satisfactory to protect its interest under this Agreement, and if Owner and Agent cannot agree as to adequate insurance, Agent shall have the right to cancel this Agreement upon the service of notice to Owner.

### 21.3 TERMINATION COMPENSATION

Owner may terminate this management contract with thirty (30) day notice.

### 21.4 OWNER RESPONSIBLE FOR PAYMENTS

Upon termination of or withdrawal from this Agreement, Owner shall assume the obligations of any contract or outstanding bill executed by Agent under this Agreement for and on behalf of Owner and responsibility for payment of all unpaid bills. In addition, Owner shall furnish Agent security, and an amount satisfactory to Agent, against any obligations or liabilities which Agent may have properly incurred on Owner's behalf under this Agreement.

Agent may withhold funds for ninety (90) days after the end of the month in which this Agreement is terminated, in order to pay bills previously incurred but not yet invoiced and to close accounts. Agent shall deliver to Owner, within ninety (90) days after the end of the month in which this Agreement is terminated, any balance of monies due Owner or of tenant security deposits, or both, which were held by Agent with respect to the Premises, as well as a final accounting reflecting the balance of income and expenses with respect to the Premises as of the date of termination or withdrawal, and all records, contracts, leases, receipts for deposits, and other papers or documents which pertain to the Premises.

## Section 22 INDEMNIFICATION SURVIVES TERMINATION

All representations and warranties of the parties contained herein, shall survive the termination of this Agreement. All provisions of this Agreement that require Owner to have insured or to defend, reimburse, or indemnify Agent (including, but not limited to, paragraphs 2.1, 2.3, 5, 8.4, 9.2, 9.5, 13, 14, 15, 16, 17.1, 20, 21.3, and 21.4) shall survive any termination; and if Agent is or becomes involved in any proceeding or litigation by reason of having been Owner's Agent, such provisions shall apply as if this Agreement were still in effect.

## Section 23 HEADINGS

All headings and subheadings employed within this Agreement and in the accompanying List of Provisions are inserted only for convenience and ease of reference and are not to be considered in the construction or interpretation of any provision of this Agreement.

## Section 24 FORCE MAJEUR

Any delays in the performance of any obligation of Agent under this Agreement shall be excused to the extent that such delays are caused by wars, national emergencies, natural disasters, strikes, labor disputes, utility failures, governmental regulations, riots, adverse weather, and other similar causes not within the control of Agent, and any time periods required for performance shall be extended accordingly.

## Section 25. COMPLETE AGREEMENT

This Agreement, including any specified attachment, constitutes the entire agreement between Owner and Agent with respect to the management and operation of the Premises and supersedes and replaces any and all previous management agreements, entered into or/and negotiated Between Owner and Agent relating to the Premises covered by this Agreement. No change to this Agreement shall be valid unless made by supplemental written agreement executed and approved by Owner and Agent. Except as otherwise provided herein, any and all amendments, additions, or deletions to this Agreement shall be null and void unless approved by Owner and Agent in writing. Each party to this Agreement hereby acknowledges and agrees that the other party has made no warranties, representations, covenants, or agreements, express or implied, to such party, other than those expressly

set forth herein, and that each party, in entering into and executing this Agreement, has relied upon no warranties, representation, covenants, or agreements, express or implied, to such party, other than those expressly set forth herein.

## Section 26. RIGHTS CUMULATIVE; NO WAIVER

No right or remedy herein conferred upon or reserved to either of the parties to this Agreement is intended to be exclusive of any other right or remedy, and each and every right and remedy shall be cumulative and in addition to any other right or remedy given under this Agreement or now or hereafter legally existing upon the occurrence of an event of default under this Agreement. The failure of either party to this Agreement to insist at any time upon the strict observance or performance of any of the provisions of this Agreement, or to exercise any right or remedy as provided in this Agreement, shall not impair any such right or remedy or be construed as a waiver or relinquishment of such right or remedy with respect to subsequent defaults. Every right and remedy given by this Agreement to the parties to it may be exercised from time to time and as often as may be deemed expedient by those parties.

## Section 27. APPLICABLE LAW AND PARTIAL INVALIDITY

The execution, interpretation, and performance of this Agreement shall in all respects be controlled and governed by the laws of the State of Nevada. If any part of this Agreement shall be declared invalid or unenforceable, Agent shall have the option to terminate this Agreement by notice to Owner.

## Section 28. NOTICES

Any notices, demands, consents, and reports necessary or provided for under this Agreement shall be in writing and shall be addressed as follows, or at such other address as Owner and Agent individually may specify hereafter in writing.

Agent:    **REALTY 7 – Jason J.S. Young**

Owner:    **NICK 3, LLC**

Such notice or other communication may be mailed by United States registered or certified mail, return receipt requested, postage prepaid, and may be deposited in a United States Post Office or a depository for the receipt of mail regularly maintained by the post office. Such notices, demands, consents, and reports may also be delivered by hand or by any other receipted method or means permitted by law. For purposes of this Agreement, notices shall be deemed to have been "given" or "delivered" upon personal delivery thereof or forty-eight (48) hours after having been deposited in the United States mails as provided herein.

9

## Section 29  AGREEMENT BINDING UPON SUCCESSORS AND ASSIGNS

This Agreement shall be binding upon the parties hereto and their respective personal representatives, heirs, administrators, executors, successors and assigns.

The undersigned Owner(s) and Agent has accepted all of the terms and conditions of this Management Agreement on the dates specified below:

_____                                         /0 . 2 - d7
Signature of Agent – Jason J.S. Young                                      Date
Property Management Division


_____          _____        /0/2/07.
Signature of Owner                              SS# or Fed ID#                    Date

10

# EXHIBIT "2"



# ADDENDUM

This Addendum modifies the Residential Property Management Agreement entered into on

October 1, 2007, with Realty 7, LLC, for management of the real property located at

4480 Spring Mountain Road, Las Vegas, NV  89146

1. Realty 7, LLC has assigned and transferred the Residential Property Management Agreement to Southwestern Management and Realty Team ( hereinafter referred to as "SMART".
2. The Broker for Smart is Mark A. Hall, 2620 Regatta Drive, Suite 102, Las Vegas, Nevada 89128. Email is markhall@managevegas.com. Fax number is 702-925-8754.
3. The Owner authorizes transferring the Owner's Maintenance and Repair Reserve deposit, if any, held in a Realty 7, LLC trust account to a similar SMART trust account.
4. A new Residential Property Management Agreement will be prepared for execution at the expiration of the current agreemet in the new management company name.

Effective, this the 16th day of March , 2009.


Marvin "Bud" Gibbs, Broker
Realty 7, LLC
Nevada Broker License # 26301


Mark A. Hall, Broker
Southwestern Management and Realty Team
Nevada Broker License # 42782


Owner Signature

Nasdaq 5, LLC
Printed


Owner Signature

Dr. Leon Chen, Managing Member
Printed



# MANAGEMENT AGREEMENT

## FOR PROPERTY LOCATED AT: 4480 SPRING MOUNTAIN RD., LAS VEGAS NV, 89102

Section 1    Appointment of Managing Agent    2
1.1 Appointment and Acceptance    2
1.2 Description of Premises    2
1.3 Term    2
Section 2    Bank Accounts    2
2.1 Operating (and/or) Reserve Accounts    2
    (a) Initial Dep. & Contingency Reserve    2
2.2 Security Deposit Account    2
2.3 Fidelity Bond    2
Section 3    Collection of Rents and Other Receipts    2
3.1 Agent's Authority    2
3.2 Special Charges    2
3.3 Security Deposits    2
Section 4    Disbursements from Operating (and/or) Reserve Account(s)    3
4.1 Operating Expenses    3
4.2 Net Proceeds    3
Section 5    Agent Not Required to Advance Funds    3
Section 6    Financial and Other Reports    3
6.1 Owner's Right to Audit    3
Section 7    Advertising    3
Section 8    Leasing and Renting    3
8.1 Agent's Authority to Lease Premises    3
8.2 No Other Rental Agent    3
8.3 Rental Rates    3
8.4 Enforcement of Leases Section    3
Section 9    Employees    4
9.1 Agent's Authority to Hire    4
9.2 Owner Pays Employee Expenses    4
9.3 Agent's Authority to File Returns    4
9.4 Workers' Compensation Insurance    4
9.5 Hold Harmless, Labor Laws    4
Section 10    Maintenance & Repair    4
10.1 Approval for Exceptional Maintenance Expense    4
Section 11    Contracts, Utilities and Services    4

Section 12    Relationship of Agent to Owner    4
Section 13    Save Harmless    4
Section 14    Liability Insurance    4
Section 15    Agent Assumes No Liability    4
Section 16    Owner Responsible for All Expenses of Litigation    5
16.1 Fees for Legal Advice    5
Section 17    Agent's Compensation and Expenses    5
17.1 For Management Services    5
17.2 For Apartment Leasing    5
17.3 For Commercial Leasing    5
17.4 For Modernization (Rehabilitation and/or Construction)    5
17.5 For Fire Restoration    5
17.6 For Other Items of Mutual Agreement    5
Section 18    Representations    5
Section 19    Structural Changes    5
Section 20    Building Compliance    6
Section 21    Termination    6
21.1 Termination by Either Party    6
21.2 Termination for Cause    6
    (a) Breach of Agreement    6
    (b) Failure to Act, Etc.    6
    (c) Excessive Damage    6
    (d) Inadequate Insurance    6
21.3 Termination Compensation    6
21.4 Owner Responsible for Payments    6
Section 22    Indemnification Survives Termination    6
Section 23    Headings    7
Section 24    Force Majeur    7
Section 25    Complete Agreement    7
Section 26    Rights Cumulative; No Waiver    7
Section 27    Applicable Law and Partial Invalidity    7
Section 28    Notices    7
Section 29    Agreement Binding Upon Successors and Assigns    7

This agreement is made this _____1st_____ day of _____October_____, 2007, by and between __NASDAQ 5, LLC__ (the "Owner(s)") and __Realty 7__ (the "Agent").

## Section 1 APPOINTMENT OF MANAGING AGENT

### 1.1 APPOINTMENT AND ACCEPTANCE

Owner hereby appoints Agent as sole and exclusive Agent of Owner to lease and manage the property described in paragraph 1.2 upon the terms and conditions provided herein. Agent accepts the appointment and agrees to furnish the services of its organization for the leasing and management of the Premises; and Owner agrees to pay all expenses in connection with those services.

### 1.2 DESCRIPTION OF PREMISES

The property to be managed by Agent under this Agreement (the "Premises") is known as Dr. Leon Chen's Property located at 820-824 E. Sahara Ave. Las Vegas, NV 89104. Consisting of the land, buildings, and other improvements described as in the State of Nevada.

### 1.3 TERM

The Term of this Agreement shall be for an initial period of __1__ years (the "initial term") from the __1st__ day of October 2007 to and including the __30th__ day of __September 2008__ and thereafter shall be automatically renewed from year to year unless terminated as provided in sections 21 or 27 herein. Each of said one-year renewal periods is referred to as a "term year".

## Section 2 BANK ACCOUNTS

The various bank accounts established under this Agreement shall at all times be established in Owner's name but under Agent's control. Agent's designees shall be the only parties authorized to draw upon such accounts. No amounts deposited in any accounts established under this Agreement shall in any event be commingled with any other funds of Agent.

### 2.1 OPERATING (AND/OR) RESERVE ACCOUNT(S)

Agent shall establish a separate account(s) known as the Realty 7 LLC Trust account . separate and apart from Agent's corporate accounts, for the deposit of receipts collected as described herein, in a bank or other institution whose deposits are insured by the federal government. Such depository shall be selected by the Agent. However, Agent shall not be held liable in the event of bankruptcy or failure of a depository. Funds in the Operating (and/or) Reserve Account(s) remain the property of Owner subject to disbursement of expenses by Agent as described in this Agreement.

(a) Initial Deposit and Contingency Reserve -Immediately upon commencement of this Agreement, Owner shall remit to Agent the sum of __$1000.00__ to be deposited in the Operating (and/or) Reserve Account(s) as an initial deposit representing the estimated disbursements to be made in the first month following the commencement of this Agreement, plus an additional sum of __$0.00__ as a contingency reserve. Owner agrees to maintain the contingency reserve stated above at all times in the Operating (and/or) Reserve Account(s) to enable Agent to pay the obligations of Owner under this Agreement as they become due. Owner and Agent shall review the amount of the contingency reserve from time to time and shall agree in writing on a new contingency reserve amount when such is required.

### 2.2 SECURITY DEPOSIT ACCOUNT

Agent shall, if required by law, maintain a separate non interest-bearing account for tenant security deposits and advance rentals. Such account shall be maintained in accordance with applicable state or local laws, if any.

### 2.3 FIDELITY BOND

Agent shall cause all personnel who handle or are responsible for the safekeeping of any monies of Owner to be covered by a fidelity bond in the amount of $ __NA__ with a company determined by Agent. Such bond shall be secured at Owner's expense. If a fidelity bond cannot be obtained, an arrest and conviction bond shall be obtained at Owner's expense. Owner shall save Agent harmless from any loss or damages caused by such personnel if no bond can be obtained.

### Section 3 COLLECTION OF RENTS AND OTHER RECEIPTS

#### 3.1 AGENT'S AUTHORITY

Agent shall collect (and give receipts for, if necessary) all rents, charges and other amounts receivable on Owner's account in connection with the management and operation of the Premises. Such receipts (except tenants' security deposits and advance rentals, which shall be handled as specified in paragraphs 2.2 and 3.3 hereof; and special charges, which shall be handled as specified in paragraph 3.2 hereof) shall be deposited in the Operating (and/or) Reserve Account(s) maintained by Agent for the Premises.

#### 3.2 SPECIAL CHARGES

If permitted by applicable law, Agent may collect from tenants any or all the following: and administrative charge for late payment of rent, a charge for returned or non-negotiable checks, a credit report fee, and administrative charge and/or broker's commission for subleasing.

#### 3.3 SECURITY DEPOSITS

Agent shall collect, deposit, and disburse tenants' security deposits in accordance with the terms of each tenant's lease. Agent shall comply with all applicable state or local laws concerning the responsibility for security deposits and interest, if any.

### Section 4 DISBURSEMENTS FROM OPERATING (AND/OR) RESERVE ACCOUNT(S)

#### 4.1 OPERATING EXPENSES

From the Operating (and/or) Reserve Account(s), Agent is hereby authorized to pay or reimburse itself for all expenses and costs of operating the Premises and for all other sums due Agent under this Agreement, including Agent's compensation under section 17.

#### 4.2 NET PROCEEDS

To the extent that funds are available, and after maintaining the cash contingency reserve amount as specified in paragraph 2.1, Agent shall transmit cash balances to Owner periodically, as follows: NASDAQ 5, LLC. Such periodic cash balances shall be remitted to the following person(s), in the percentage(s) specified, and at the address(es) shown:

| Name | Percentage | Address |
|------|-----------|---------|
| NASDAQ 5, LLC | 100% | 6170 Desert Inn Road, Las Vegas, NV, 89146 |
| | | |
| | | |
| | | |

### Section 5 AGENT NOT REQUIRED TO ADVANCE FUNDS

In the event that the balance in the Operating (and/or) Reserve Account(s) is at any time insufficient to pay disbursements due and payable under paragraphs 4.1 and 4.2 above, Owner shall, immediately upon notice, remit to Agent sufficient funds to cover the deficiency and replenish the contingency reserve. In no event shall Agent be required to use its own funds to pay such disbursements. Nor shall Agent be required to advance any monies to Owner, to the Security Deposit Account, or to the Operating (and/or) Reserve Account(s).

If Agent elects to advance any money in connection with the Premises to pay any expenses for Owner, such advance shall be considered a loan subject to repayment with interest, and Owner hereby agrees to reimburse Agent, including interest to be agreed upon by Owner(s) and Agent and hereby authorizes Agent to deduct such amounts from any monies due Owner.

3

**Section 6  FINANCIAL AND OTHER REPORTS**

By the ___10___ day of each month, Agent shall furnish Owner with a statement of cash receipts and disbursements from the operation of the Premises during the previous month. In addition, Agent shall, on a mutually acceptable schedule, prepare and submit to Owner such other reports as are agreed on by both parties.

### 6.1  OWNER'S RIGHT TO AUDIT

Owner shall have the right to request periodic audits of all applicable accounts managed by Agent, and the cost of such audit(s) shall be paid by Owner.

**Section 7 ADVERTISING**

Agent is authorized to advertise the Premises or portions thereof for rent, using periodicals, signs, plans, brochures, or displays, or such other means as Agent may deem proper and advisable. Agent is authorized to place signs on the Premises advertising the Premises for rent, provided such signs comply with applicable laws. The cost of such advertising shall be paid out of the Operating (and/or) Reserve Account(s). All advertising shall make clear that Agent is the manager and NOT the Owner of the Premises. Newspaper ads that share space with other properties managed by the Agent shall be prorated based on cost.

**Section 8  LEASING AND RENTING**

### 8.1 AGENT'S AUTHORITY TO LEASE PREMISES

Owner shall approve all leases, new & renewals.

### 8.2  NO OTHER RENTAL AGENT

During the term of this Agreement, Owner shall not authorize any other person, firm, or corporation to negotiate or act as leasing or rental agent with respect to any leases for space in the Premises. Owner agrees to promptly forward all inquires about leases to Agent.

### 8.3  RENTAL RATES

Agent is authorized to establish and change or revise all rents, fees, or deposits, and any other charges chargeable with respect to the Premises with the approval of the Owner.

### 8.4  ENFORCEMENT OF LEASES

Agent is authorized to institute, in Owner's name, all legal actions or proceedings for the enforcement of any lease term, for the collection of rent or other income from the Premises, or for the evicting or dispossessing of tenants or other persons from the Premises. Agent is authorized, when expedient, to settle, compromise, and release such legal actions or suits or reinstate such tenancies. Any monies for such settlements paid out by Agent shall not exceed $ **0.00** without prior approval by Owner. Attorney's fees, filing fees, court costs, and other necessary expenses incurred in connection with such actions and not recovered from tenants shall be paid out of the Operating (and/or) Reserve Account(s) or reimbursed directly to Agent by Owner. Agent may select the attorney of its choice to handle such litigation.

**Section 9  EMPLOYEES**

### 9.1  AGENT'S AUTHORITY TO HIRE

Personnel for Premises with Owner's consent only.

### 9.2  OWNER PAYS EMPLOYEE EXPENSES

Only with Owner's consent.

### 9.3  AGENT'S AUTHORITY TO FILE RETURNS

Agent shall do and perform all acts required of an employer with respect to the Premises and shall execute and file all tax and other returns required under the applicable federal, state, and local laws, regulations, and/or ordinances governing employment, and all other statements and reports pertaining to labor employed in connection with the Premises and under any similar federal or state law now or hereafter in force. In connection with such filings, Owner shall upon request promptly execute and deliver to Agent all necessary powers of attorney, notices of appointment, and the like. Owner shall be responsible for all amounts required to be paid under the foregoing laws, and Agent shall pay the same from the Operating (and/or) Reserve Account(s).

4

### 9.4 WORKER'S COMPENSATION INSURANCE

Agent shall, at Owner's expense, maintain workers' compensation insurance covering all liability of the employer under established workers' compensation laws.

### 9.5 HOLD HARMLESS, LABOR LAWS

Agent shall be responsible for compliance with all applicable state or federal labor laws. Owner shall indemnify, defend, and save Agent harmless from all claims, investigations, and suits, or from Owner's actions or failures to act, with respect to any alleged or actual violation of state or federal labor laws. Owner's obligation with respect to such violation(s) shall include payment of all settlements, judgments, damages, liquidated damages, penalties, forfeitures, back pay awards, court costs, litigation expenses, and attorney's fees.

## Section 10 MAINTENANCE AND REPAIR

Agent is authorized with Owners' consent only, to make or cause to be made, through contracted services or otherwise, all ordinary repairs and replacements reasonably necessary to preserve the Premises in its present condition and for the operating efficiency of the Premises, and all alterations required to comply with lease requirements, governmental regulations, or insurance requirements. Agent is also authorized to decorate the Premises and to purchase or rent, on Owner's behalf, all equipment, tools, appliances, materials, supplies, uniforms, and other items necessary for the management, maintenance or operation of the Premises. Such maintenance and decorating expenses shall be paid out of the Operating (and/or) Reserve Account(s) This section applies except where decorating and/or maintenance are at tenants' expense as stipulated in a lease.

### 10.1 APPROVAL FOR EXCEPTIONAL MAINTENANCE EXPENSE

The expense to be incurred for any one item of maintenance, alteration, refurbishing, or repair shall not exceed the sum of **$1,000.00**, unless such expense is specifically authorized by Owner, or is incurred under such circumstances as Agent shall reasonably deem to be an emergency. In an emergency where repairs are immediately necessary for the preservation and safety of the Premises, or to avoid the suspension of any essential service to the Premises, or to avoid danger to life or property, or the comply with federal, state, or local law, such emergency repairs shall be made by Agent at Owner's expense without prior approval.

## Section 11 CONTRACTS, UTILITIES AND SERVICES

Agent is authorized to negotiate contracts for nonrecurring items of expense, not to exceed **$1,000.00** unless approved by Owner, and to enter into agreements in Owner's name for all necessary repairs, maintenance, minor alterations, and utility services. Agent shall, in Owner's name and at Owner's expense, make contracts on Owner's behalf for electricity, gas, telephone, fuel, or water, and such other services as Agent shall deem necessary or prudent for the operation of the Premises. All utility deposits shall be the Owner's responsibility, except that Agent may pay same from the Operation (and/or) Reserve Account(s) at Owner's request.

## Section 12 RELATIONSHIP OF AGENT TO OWNER

The relationship of the parties to this Agreement shall be that of Principal and Agent, and all duties to be performed by Agent under this Agreement shall be for and on behalf of Owner, in Owner's name, and for Owner's account. In taking any action under this Agreement, Agent shall be acting only as Agent for Owner, and nothing in this Agreement shall be construed as creating a partnership, joint venture, or any other relationship between the parties to this Agreement except that of Principal and Agent, or as requiring Agent to bear any portion of losses arising out of or connected with the ownership or operation of the Premises. Nor shall Agent at any time during the period of this Agreement be considered a direct employee of Owner. Neither party shall have the power to bind or obligate the other except as expressly set forth in this Agreement, except that Agent is authorized to act with such additional authority and power as may be necessary to carry out the spirit and intent of the Agreement.

## Section 13 SAVE HARMLESS

Owner shall indemnify, defend, and save Agent harmless from all loss, damage, cost, expense (including attorneys' fees), liability, or claims for personal injury or property damage incurred or occurring in, on or about the Premises.

## Section 14  LIABILITY INSURANCE

Owner shall obtain and keep in force adequate insurance against physical damage (e.g. fire with extended coverage endorsement, boiler and machinery, etc.) and against liability for loss, damage, or injury to property or persons which might arise out of the occupancy, management, operation, or maintenance of the Premises. The amounts and types of insurance shall be acceptable to both Owner and Agent, and any deductible required under such insurance policies shall be Owner's expense. Agent shall be covered as an additional insured on all liability insurance maintained with respect to the Premises. Liability insurance shall be adequate to protect the interests of both Owner and Agent and in form, substance, and amounts reasonable satisfactory to Agent. Owner agrees to furnish Agent with certificates evidencing such insurance or with duplicate copies of such policies within **10** days of the execution of this Agreement. If Owner fails to do so, Agent may, but shall not be obligated to place said insurance and charge the costs thereof to the Operating (and/or) Reserve Account(s). Said policies shall provide that notice of default or cancellation shall be sent to Agent as well as Owner and shall require a minimum of **30** days' written notice to Agent before any cancellation of or changes to said policies.

## Section 15  AGENT ASSUMES NO LIABILITY

Agent assumes no liability whatsoever for any acts or omissions of Owner, or any previous owners of the Premises, or any previous management or other agent of either. Agent assumes no liability for any failure of or default by any tenant in the payment of any rent or other charges due Owner or in the performance of any obligations owed by any tenant to Owner pursuant to any lease or otherwise. Nor does Agent assume any liability for previously unknown violations of environmental or other regulations which may become known during the period this Agreement is in effect. Any such regulatory violations or hazards discovered by Agent shall be brought to the attention of Owner in writing, and Owner shall promptly cure them.

## Section 16  OWNER RESPONSIBLE FOR ALL EXPENSES OF LITIGATION

Owner shall pay all expenses incurred by Agent, including, but not limited to, reasonable attorneys' fees and Agent's costs and time, and any liability, fines, penalties or the like, in connection with any claim, proceeding, or suit involving an alleged violation by Agent or Owner, or both, of any law pertaining to fair employment, fair credit reporting, environmental protection, rent control, taxes, or fair housing, including, but not limited to, any law prohibiting or making illegal discrimination on the basis of race, sex, creed, color, religion, national origin, or mental or physical handicap, provided, however, that Owner shall not be responsible to Agent for any such expenses in the event Agent is finally adjudged to have personally, and not in a representative capacity, violated any such law. Nothing contained in this Agreement shall obligate Agent to employ legal counsel to represent Owner in any such proceeding or suit.

### 16.1  FEES FOR LEGAL ADVICE

Owner shall pay reasonable expenses incurred by Agent in obtaining legal advice regarding compliance with any law affecting the Premises or activities related to them. If such expenditure also benefits others for whom Agent in the Agreement acts in a similar capacity, Owner agrees to pay an apportioned amount of such expense.

## Section 17  AGENT'S COMPENSATION AND EXPENSES

As compensation for the services provided by Agent under this Agreement (and exclusive of reimbursement of expenses to which Agent is entitled hereunder), Owner shall pay Agent as follows:

### 17.1  FOR MANAGEMENT SERVICES

**4%** of the total monthly gross receipts from the Premises. Payments due Agent for periods of less than an calendar month shall be prorated over the number of days for which compensation is due. The percentage amount set forth above shall be based upon the total gross receipts from the Premises during the preceding month.

The term "gross receipts" shall be deemed to include all rents and other income and charges from the normal operation of the Premises, including, but not limited to, rents, parking fees, laundry income, forfeited

6

security deposits, pet deposits, other fees and deposits, and other miscellaneous income, Gross receipts shall NOT be deemed to include the special charges listed in paragraph 3.2, or excess interest on security deposits (from paragraph 3.3), or income arising out of the sale of real property of the settlement of fire or other casualty losses and items of a similar nature.

## Section 18  REPRESENTATIONS

Owner represents and warrants: That Owner has full power and authority to enter this Agreement; that there are no written or oral agreements affecting the Premises other than tenant leases, copies of which have been furnished to Agent; that there are no recorded easements, restrictions, reservations, or rights of way which adversely affect the use of the Premises for the purposes intended under this agreement; that to the best of Owner's knowledge, the property is zoned for the intended use; that all leasing and other permits for the operation of the Premises have been secured and are current; that the building and its construction and operation do not violate any applicable statutes, laws, ordinances, rules, regulations, orders, or the like (including, but not limited to, those pertaining to hazardous or toxic substances); that the building does not contain any asbestos, urea, formaldehyde, radon, or other toxic substance; and that no unsafe condition exists.

## Section 19  STRUCTURAL CHANGES ;

Owner expressly withholds from Agent any power or authority to make any structural changes in any building, or to make any other major alterations or additions in or to any such building or to any equipment in any such building, or to incur any expense chargeable to Owner other than expenses related to exercising the express powers vested in Agent through this Agreement, without the prior written consent of the following person:

NASDAQ 5, LLC                                    6170 Desert Inn Rd. Las Vegas NV. 89146
Name                                             Address

However, such emergency repairs as may be required because of danger to life or property, or which are immediately necessary for the preservation and safety of the Premises of the safety of the tenants and occupants thereof, or required to avoid the suspension of any necessary service to the Premises, or to comply with the applicable federal, state, or local laws, regulations, or ordinances, shall be authorized pursuant to paragraph 10.1 of this Agreement, and Agent shall notify Owner appropriately.

## Section 20  BUILDING COMPLIANCE

Agent does not assume and is given no responsibility for compliance of the Premises or any building thereon or any equipment therein with the requirements of any building codes or with any statute, ordinance, law or regulation of any governmental body or of any public authority or official thereof having jurisdiction, except to notify Owner promptly or forward to Owner promptly and complaints, warnings, notices, or summonses received by Agent relating to such matters. Owner represents that to the best of Owner's knowledge the Premises and all such equipment comply with all such requirements, and Owner authorizes Agent to disclose the ownership of the Premises to any such officials and agrees to indemnify and hold Agent, its representatives, servants, and employees, harmless of and from all loss, cost, expense, and liability whatsoever which may be imposed by reason of any present of future violation or alleged violation of such laws, ordinances, statutes, or regulations.

## Section 21  TERMINATION

### 21.1  TERMINATION BY EITHER PARTY
This Agreement may be terminated by either Owner or Agent with or without cause within (30) days upon written notice by either party.
### 21.2  TERMINATION FOR CAUSE
Notwithstanding the foregoing, this Agreement shall terminate in any event, and all obligations of the parties hereunder shall cease (except as to liabilities of obligations which have accrued or arisen prior to such termination, or which accrue pursuant to paragraph 21.3 as a result of such termination, and obligations to insure and indemnify), upon the occurrence of any of the following events:
(a) Breach of Agreement - Thirty (30) days after the receipt of notice by either party to the other specifying in detail

7

a material breach of this Agreement, if such breach has not been cured within said thirty (30) day period; or if such breach is of a nature that it cannot be cured within said thirty (30) day period but can be cured within a reasonable time thereafter, if efforts to cure such breach have not commenced or/and such efforts are not proceeding and being continued diligently both during and after such thirty (30) day period prior to the breach being cure. HOWEVER, the breach of any obligation of either party hereunder to pay any monies to the other party under the terms of this Agreement shall be deemed to be curable within thirty (30) days.

(b) Failure to Act, Etc. – In the event that any insurance required of Owner is not maintained without any lapse, or it is alleged or charged that the Premises, or any portion thereof, or any act or failure to act by Owner, its agent and employees with respect to the Premises, fails to comply with any law or regulation, or any order or ruling of any public authority, and Agent, in its sole discretion, considers that the action or position of Owner or its representatives with respect thereto may result in damage or liability to Agent, or disciplinary proceeding with respect to Agent's license, Agent shall have the right to terminate this Agreement at any time by written notice to Owner of its election to do so, which termination shall be effective upon the service of such notice. Such termination shall not release the indemnities of Owner set forth herein.

(c) Excessive Damage – Upon the destruction of or substantial damage to the Premises by any cause, or the taking of all or a substantial portion of the Premises by eminent domain, in either case making it impossible or impractical to continue operation of the Premises.

(c) Inadequate Insurance – If Agent deems that the liability insurance obtained by Owner per Section 14 is not reasonably satisfactory to protect its interest under this Agreement, and if Owner and Agent cannot agree as to adequate insurance, Agent shall have the right to cancel this Agreement upon the service of notice to Owner.

    21.3  TERMINATION COMPENSATION

        Owner may terminate this management contract with thirty (30) day notice.

    21.4  OWNER RESPONSIBLE FOR PAYMENTS

        Upon termination of or withdrawal from this Agreement, Owner shall assume the obligations of any contract or outstanding bill executed by Agent under this Agreement for and on behalf of Owner and responsibility for payment of all unpaid bills. In addition, Owner shall furnish Agent security, and an amount satisfactory to Agent, against any obligations or liabilities which Agent may have properly incurred on Owner's behalf under this Agreement.

        Agent may withhold funds for ninety (90) days after the end of the month in which this Agreement is terminated, in order to pay bills previously incurred but not yet invoiced and to close accounts. Agent shall deliver to Owner, within ninety (90) days after the end of the month in which this Agreement is terminated, any balance of monies due Owner or of tenant security deposits, or both, which were held by Agent with respect to the Premises, as well as a final accounting reflecting the balance of income and expenses with respect to the Premises as of the date of termination or withdrawal, and all records, contracts, leases, receipts for deposits, and other papers or documents which pertain to the Premises.

## Section 22  INDEMNIFICATION SURVIVES TERMINATION

        All representations and warranties of the parties contained herein shall survive the termination of this Agreement. All provisions of this Agreement that require Owner to have insured or to defend, reimburse, or indemnify Agent (including, but not limited to, paragraphs 2.1, 2.3, 5, 8.4, 9.2, 9.5, 13, 14, 15, 16, 17.1, 20, 21.3, and 21.4) shall survive any termination; and if Agent is or becomes involved in any proceeding or litigation by reason of having been Owner's Agent, such provisions shall apply as if this Agreement were still in effect.

## Section 23  HEADINGS

        All headings and subheadings employed within this Agreement and in the accompanying List of Provisions are inserted only for convenience and ease of reference and are not to be considered in the construction or interpretation of any provision of this Agreement.

## Section 24  FORCE MAJEUR

        Any delays in the performance of any obligation of Agent under this Agreement shall be excused to the extent that such delays are caused by wars, national emergencies, natural disasters, strikes, labor disputes, utility failures, governmental regulations, riots, adverse weather, and other similar causes not within the control of Agent, and any time periods required for performance shall be extended accordingly.

## Section 25  COMPLETE AGREEMENT

This Agreement, including any specified attachment, constitutes the entire agreement between Owner and Agent with respect to the management and operation of the Premises and supersedes and replaces any and all previous management agreements entered into or/and negotiated Between Owner and Agent relating to the Premises covered by this Agreement. No change to this Agreement shall be valid unless made by supplemental written agreement executed and approved by Owner and Agent. Except as otherwise provided herein, any and all amendments, additions, or deletions to this Agreement shall be null and void unless approved by Owner and Agent in writing. Each party to this Agreement hereby acknowledges and agrees that the other party has made no warranties, representations, covenants, or agreements, express or implied, to such party, other than those expressly

set forth herein, and that each party, in entering into and executing this Agreement, has relied upon no warranties, representation, covenants, or agreements, express or implied, to such party, other than those expressly set forth herein.

## Section 26  RIGHTS CUMULATIVE; NO WAIVER

No right or remedy herein conferred upon or reserved to either of the parties to this Agreement is intended to be exclusive of any other right or remedy, and each and every right and remedy shall be cumulative and in addition to any other right or remedy given under this Agreement or now or hereafter legally existing upon the occurrence of an event of default under this Agreement. The failure of either party to this Agreement to insist at any time upon the strict observance or performance of any of the provisions of this Agreement, or to exercise any right or remedy as provided in this Agreement, shall not impair any such right or remedy or be construed as a waiver or relinquishment of such right or remedy with respect to subsequent defaults. Every right and remedy given by this Agreement to the parties to it may be exercised from time to time and as often as may be deemed expedient by those parties.

## Section 27  APPLICABLE LAW AND PARTIAL INVALIDITY

The execution, interpretation, and performance of this Agreement shall in all respects be controlled and governed by the laws of the State of Nevada. If any part of this Agreement shall be declared invalid or unenforceable, Agent shall have the option to terminate this Agreement by notice to Owner.

## Section 28  NOTICES

Any notices, demands, consents, and reports necessary or provided for under this Agreement shall be in writing and shall be addressed as follows, or at such other address as Owner and Agent individually may specify hereafter in writing.

Agent: Realty 7- Jason J.S. Young

Owner:   Nasdaq 5 LLC

Such notice or other communication may be mailed by United States registered or certified mail, return receipt requested, postage prepaid, and may be deposited in a United States Post Office or a depository for the receipt of mail regularly maintained by the post office. Such notices, demands, consents, and reports may also be delivered by hand or by any other receipted method or means permitted by law. For purposes of this Agreement, notices shall be deemed to have been "given" or "delivered" upon personal delivery thereof or forty-eight (48) hours after having been deposited in the United States mails as provided herein.

9

**Section 29  AGREEMENT BINDING UPON SUCCESSORS AND ASSIGNS**

This Agreement shall be binding upon the parties hereto and their respective personal representatives, heirs, administrators, executors, successors and assigns.

The undersigned Owner(s) and Agent has accepted all of the terms and conditions of this Management Agreement on the dates specified below:

_____

Signature of Agent – Jason J.S. Young
Property Management Division

_____10 · 2 · 07_____
Date

_____

Signature of Owner
NASDAQ 5, LLC

· SS# or Fed ID#

_____10/2/07._____
Date

See amendment attached

10

Addendum to Management Agreement

This Addendum ("Addendum") modifies the Management Agreement between _____ and REALTY 7 dated October 1, 2007 ("Agreement"). Terms defined in the Agreement shall have the same meaning in the Addendum. Unless modified by the Addendum, the Agreement remains unchanged. The Addendum shall be effective on the same date that the Agreement became effective and the Addendum is part of the Agreement. The Agreement is modified in the following respects:

1.   The words "lease and" in Section 1.1 are deleted.

2.   The words "Subject to the consent of Owner which shall not be unreasonably withheld," shall be added at the beginning of Section 2.1.

3.   Section 2.3 shall be deleted in its entirety and replaced with the following: "Agent represents that it has in place a fidelity bond covering any employee or independent contractor who has access to any funds referenced in this Agreement in an amount of at least _____. Failure of Agent to maintain a fidelity bond shall constitute a substantial breach of this Agreement.

4.   Section 8.2 is deleted in its entirety and the following substituted in its place: "Intentionally omitted."

5.   Section 8.4 is modified by adding the following at the end of the Section: "Notwithstanding anything else set forth in this Section to the contrary, the settlement compromise, release of any actions or suits, reinstatement of tenancies and selection of counsel is subject to the consent of the Owner which shall not be unreasonably withheld.

6.   Section 9.4 is deleted in its entirety and the following substituted in its place: "Intentionally omitted."

7.   Section 10 is modified by adding the following at the end of the Section: "If Owner has a preference for use of certain contractors or services, to the extent possible, Agent will honor Owner preferences."

8.   Section 11 is modified by adding the following at the end of the Section: "Notwithstanding anything else set forth herein to the contrary, if Agent has a conflict of interest with the appointment of person or service who will address a maintenance Agent will not use such person or entity without the advance written consent of Owner. For this purpose a conflict includes direct or indirect ownership of control or receipt of any kind of consideration monetary or otherwise from the provider."

9.   Sections 13, 15 and 16 are modified by adding the following at the beginning of the Section: "Except in the case of the negligence or illegal acts committed by Agent, their employees or representatives,"

10.  Section 16.1 is modified by adding the following at the beginning of the Section: "Subject to advance written consent from Owner,"

11.  Section 21.4 is amended by substituting "15" for the number "90."

12.  Section 22 is amended by adding the following at the end of the Section: "Notwithstanding anything else set forth in this Agreement to the contrary, Agent agrees to defend, indemnify and hold Owner harmless in any third party claim relating directly or indirectly to illegal acts or negligence of Agent

or its employees or representatives.  This Section shall survive termination of this Agreement.

OWNER

By: _____

Name: _Lion Chen_____

Title: _____

Date: _10/2/07_____

AGENT

By: _____

Name: _JASON YOUNG_____

Title: _PROPERTY MGR_____

Date: _10/2/07_____