Matthew L. Johnson (6004)
Russell G. Gubler (10889)
**Matthew L. Johnson & Associates, P.C.**
8831 W. Sahara Avenue
Las Vegas, Nevada 89117
(702) 471-0065 Telephone
(702) 471-0075 Facsimile
*Attorney for Nevada State Bank*

E-Filed on March 15, 2011

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>NICK3, LLC,<br>    Debtor<br><br>NASDAQ5, LLC,<br>    Debtor<br><br>ALEC4, LLC,<br>    Debtor | Case No. BK-S-11-11249-BAM<br>(Jointly Administered with Case<br>No. BK-S-11-11252-BAM,<br>BK-S-11-11253-BAM)<br><br>Chapter 11<br><br>**OPPOSITION TO DEBTOR'S EMERGENCY MOTION FOR AN INTERIM ORDER AUTHORIZING USE OF CASH COLLATERAL AND RELATED RELIEF AND SCHEDULING FINAL HEARING PURSUANT TO FED. R. BANKR. P. 4001(b)(2)**<br><br>Date of Hearing: March 29, 2011<br><br>Time of Hearing: 10:00 a.m. |

  NEVADA STATE BANK ("NSB"), by and through its counsel of the law firm of Matthew L. Johnson & Associates, P.C., files this opposition to Debtor's Emergency Motion for an Interim Order Authorizing Use of Cash Collateral and Related Relief and Scheduling Final Hearing Pursuant to Fed. R. Bankr. P. 4001(b)(2) ("Motion") and requests that the Court deny the Motion for the reasons set forth below. Alternatively, NSB requests that the Court condition the Debtor's use of cash collateral according to the limitations set forth in this opposition.

  This Opposition is supported by the Affidavit of Rosauro, the pleadings and papers on file,

////

////

1

as well as the Points and Authorities below.

DATED this 15th day of March, 2011.

By: /s/ Russell Gubler
MATTHEW L. JOHNSON (6004)
RUSSELL G. GUBLER (10889)
**MATTHEW L. JOHNSON & ASSOCIATES, P.C.**
8831 W. Sahara Avenue
Las Vegas, Nevada 89117
(702) 471-0065 Telephone
(702) 471-0075 Facsimile
*Attorneys for Nevada State Bank*

## **POINTS AND AUTHORITIES**

### I. FACTS

The principal of Nick3, LLC ("Nick3"), Leon Chen ("Chen"), borrowed $1,120,000 from NSB to purchase certain real property located at 4631 Spring Mountain Rd., Las Vegas, NV (Clark County APN 162-18-210-002) (the "Property").[1] The loan is evidenced by a Promissory Note ("Note") in the original principal amount of $1,120,000. The Note is secured by Chen/Nick3's payment, and performance obligations under the Note are secured by, among other things, a Deed of Trust and assignment of rents dated November 21, 2005, and recorded as Document No. 20051130-0004762, Clark County Recorder, Nevada (the "County") encumbering the Property. (the "Deed of Trust"). On or about November 21, 2005, Chen executed an Assignment of Rents, recorded as Document No. 20051130-0004763 (the "Assignment") in favor of NSB, wherein Chen assigned his interest in all leases, including future leases, Chen entered into with respective tenants in connection with the Property. Pursuant to the Note, Deed of Trust, Assignment, and related documents, NSB holds a perfected security interest in the rents generated by the Property.

---

[1] Beauty to Beauty, Lily Massage & Spa, and Pho Tahi Binh, LLC, referenced in the Motion, are located at the Property

2

Upon information and belief, Chen transferred his interest in the Property to Nick3 on or about December 8, 2008, and recorded as Document No. 20081208-0001179. Chen/Nick3 continued to send payments on the Note until August 2010.

Similarly, Alec4, LLC ("Alec4") borrowed $622,500 from NSB to purchase certain real property located at 4949 Spring Mountain Rd., Las Vegas, NV (Clark County APN 163-13-603-001) (the "PropertyII").[2] The loan is evidenced by a Promissory Note ("NoteII") in the original principal amount of $622,500. The Note is secured by Alec4's payment, and performance obligations under NoteII are secured by, among other things, a Deed of Trust and assignment of rents dated February 9, 2005, and recorded as Document No. 20050214-0002312, Clark County Recorder, Nevada (the "County") encumbering PropertyII. ("Deed of Trust II"), in favor of NSB. In Deed of Trust II, Alec4 assigned its interest in all leases, including future leases, Alec4 entered into with respective tenants in connection with PropertyII. Pursuant to NoteII, Deed of Trust II, and related documents, NSB holds a perfected security interest in the rents generated by PropertyII. The Note and NoteII will be collectively referred to as the "Notes". The Deed of Trust and the Deed of Trust II will be collectively referred to as the "Deeds of Trust". The Property and PropertyII will be collectively referred to as the "Properties".

Nick3/Chen and Alec4 defaulted on the Notes by failing to make their monthly payments as they came due. The last payment NSB received was a partial payment on both of the Properties on or about August 25, 2010. On November 5, 2010 and November 9, 2010, NSB caused to be filed a Notice of Breach & Election to Sell Under Deed of Trust with the Clark County Recorder's Office at Instrument No. 201011050002757 and 201011090001945 on the respective Properties. The amount currently owed by Chen/Nick3 on the Property is approximately $1,101,418.10. The amount currently by Alec4 on PropertyII is approximately $515,607.59, totaling over $1,617,025 owed to the bank.

---

[2] Dynamic Innovations, Inc., referenced in the Motion, is located at PropertyII.

3

On August 2, 2010, NSB obtained an appraisal of the Properties. According to the appraisals, as of August 2, 2010, the market value of the Property "As Is" was $1,190,000, excluding costs. The Market Value of the Property "As If Vacant – Less Demolition Costs" was $340,000, excluding costs. The Market Value of PropertyII, whether "As Is" or "As If Vacant – Less Demolition Costs", totals $380,000, excluding. The Bulk Market Value of both Properties totals $1,490,000.

The foreclosures for both Properties were set to occur on May 2, 2011. However, on January 28, 2011, the Debtors filed for bankruptcy protection.

The Motion should be denied for a number of reasons. First, NSB is not adequately protected. Both of the Properties, valued as if vacant, are less than the amount owed to NSB. In addition, the Bulk Market Value of the Properties is still less than the total amount owed to NSB. Further, according to the appraisal, the Properties are expected to continue to diminish in value. Moreover, Debtors claim to have made approximately $900,000 in rents last year. However, the Debtors have failed to pay NSB since August 2010. How do the Debtors expect to pay NSB if the Debtors made approximately $900,000 last year in rents and still failed to pay NSB? Second, if the Motion is not denied, the budget presented by Debtors is an open-ended, unrestricted use of NSB's cash collateral. The Debtors seek to use NSB's cash collateral to fund administration of the Bankruptcy Estate, including the payment of professional fees and costs. This is evidenced by the payment of a retainer of approximately $100,000 to the Debtor's counsel, as well as the continued payment of professional fees listed in the budget. Further, Debtors seek to use the cash collateral to pay lease commissions, as well as to pay for management consulting, even though the Debtors seek to employ a property manager. Third, to the extent appropriate, the Debtor is not offering a replacement lien in post petition generated rents, but rather seeks to use post-petition rents without recognizing the ongoing security interest of the Bank in such.

## II. ARGUMENT

### A.  *NSB has a Perfected Security Interest in Both the Properties and the Rents the Properties Generate.*

NSB perfected both its security interest in the Properties, as well as in the rents

4

the Properties generate, by recording a deed of trust and related documents in the recorder's office of the county where the Properties are located. With respect to perfection of an assignment of an interest in rents, NRS 107A.240 provides in relevant part, as follows:

> 1. A document creating an assignment of rents may be submitted for recording in the office of the recorder of the county in which the real property is located in the same manner as any other document evidencing a conveyance of an interest in real property.
>
> 2. Upon recording, the security interest in rents created by an assignment of rents is fully perfected, even if a provision of the document creating the assignment or law of this State other than this chapter would preclude or defer enforcement of the security interest until the occurrence of a subsequent event, including, without limitation, a subsequent default of the assignor, the assignee's obtaining possession of the real property or the appointment of a receiver.

Accordingly, NSB's security interest in the Properties, and the rents the Properties generate, is perfected. To the extent the Debtor disputes this point, NSB reserves the right to submit appropriate documentary evidence and testimony, as well as further legal argument.

### B.   *Post-Petition Rents from the Properties Constitute NSB's Cash Collateral.*

"Cash collateral" is defined in 11 U.S.C. § 363(a) to include the following:

> [C]ash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest *and includes the proceeds, products, offspring, rents, or profits of the property . . . . Subject to a security interest as provided in section 552(b) of this title,* whether existing before or after commencement of a case under this title.

11 U S C § 363(a) (emphasis added).

Section 552(a) of the Bankruptcy Code acts generally to terminate an after-acquired property clause in a security agreement as of a debtor's petition date. However, section 552(b)(2) provides an exception to this general rule for, *inter alia,* post-petition rents that flow from property subject to a pre-petition security agreement, to the extent the security agreement covered such rents:

> If the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security

5

agreement extends to property of the debtor acquired before the commencement of the case and to amounts paid as rents of such property ... then such security interest extends to such rents ... acquired by the estate after the commencement of the case to the extent provided in such security agreement, except to any extent that the court, after notice and a hearing based on the equities of the case, orders otherwise.

11 U.S.C. § 552(b). *See also* 3 COLLIER ON BANKRUPTCY [15th ed. Rev.] at 363.03[3][c][i] ("Although pursuant to section 552(a) security interest generally do not extend to property acquired after commencement of a bankruptcy case, section 552(b) provides that an interest in rents may continue.")

The Debtors cannot dispute that the Deed of Trust and Assignment of Rents securing the Properties extends to rents the Properties generate. Moreover, on the Property, the parties also signed a separate Assignment of Rents agreement. To the extent the Debtors contend otherwise, NSB reserves the right to submit appropriate evidence and further argument. Accordingly the Properties' post-petition rents constitute NSB's cash collateral, and are subject to the court approval and adequate protection requirements set forth in Bankruptcy Code sections 361 and 363.

### C. The Relief Requested in the Motion Does Not Adequately Protect NSB's Collateral.

Bankruptcy Code section 363(e) requires that a debtor's use of property in which another entity has an interest be conditioned "to provide adequate protection of such interest," The rationale for adequate protection is to preserve the "status quo" of a secured creditor's collateral, and to prevent a diminution in the collateral's value caused by a debtor's use of such property. *See generally* 3 Collier on Bankruptcy [15th ed. Rev.] at paragraph 361.03[5]; 11 U.S.C. section 361.

Based on the appraisal attached to the Affidavit of Rosauro Belzer, on file herein, NSB is not adequately protected. The Bulk Market Value of both Properties is less than the amount owed to NSB. Further, even though the Debtors' principal states that the Debtors earned approximately $900,000 in rents in 2010, the Debtors have not paid NSB since August 2010, which was a partial

payment. Moreover, the appraisal predicts that the values of the Properties will continue to decline. Therefore, NSB requests that the motion be denied.

Alternatively, in the even that the Court allows the Debtors to use the cash collateral, NSB contends that the post-petition generated rents also constitute its cash collateral. To the extent the Court finds otherwise, the Debtor must provide a replacement lien.

Further, issues and rights reserved by NSB include, without limitation, the following: (i) the nature and scope of the Debtor's limited interest in real and personal property and affect on the bankruptcy estate; (ii) NSB's cash collateral consisting of post petition generated rents; (ii) the extent to which the Debtor must grant a replacement lien in post petition generated rents; (iii) use of the Bank's cash collateral to fund retainers and pay Debtor's professionals; (iv) the Debtor's projected budget of expenditures beyond March, 2011; and (v) monthly post petition payments to NSB.

### III. CONCLUSION

NSB respectfully requests that the Court deny the Debtors' motion to use the cash collateral. Alternatively, NSB requests that the Court condition the Debtor's use of cash collateral according to the limitations set forth in this opposition.

DATED this 15th day of March, 2011.

By: /s/ Russell G. Gubler
MATTHEW L. JOHNSON (6004)
RUSSELL G. GUBLER (10889)
**MATTHEW L. JOHNSON & ASSOCIATES, P.C.**
8831 W. Sahara Avenue
Las Vegas, Nevada 89117
(702) 471-0065 Telephone
(702) 471-0075 Facsimile
*Attorneys for Nevada State Bank*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 15th day of March, 2011, I sent a true and correct copy of Nevada State Bank's OPPOSITION TO DEBTOR'S EMERGENCY MOTION FOR AN INTERIM ORDER AUTHORIZING USE OF CASH COLLATERAL AND RELATED RELIEF AND SCHEDULING FINAL HEARING PURSUANT TO FED. R. BANKR. P. 4001(b)(2), as well as DECLARATION IN SUPPORT OF OPPOSITION TO DEBTOR'S EMERGENCY MOTION FOR AN INTERIM ORDER AUTHORIZING USE OF CASH COLLATERAL AND RELATED RELIEF AND SCHEDULING FINAL HEARING PURSUANT TO FED. R. BANKR. P. 4001(b)(2) via electronic service to the following:

*See* Master Service List

_____
An Employee of Matthew L. Johnson & Associates, P.C.