Michael R. Brooks, Esq.
Nevada Bar No. 7287
BROOKS BAUER LLP
300 S. 4th Street, Suite 815
Las Vegas, NV 89101
Ph (702) 851-1191
Fax (702) 851-1198
Attorneys for Secured Creditor
East West Bank

*Electronically filed:* March 25, 2011

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF NEVADA

In re:

NASDAQ5, LLC,

    Debtor.

Lead Case No.: 11-11249-BAM
Case No.: 11-11252-BAM

Chapter 11

**OPPOSITION OF EAST WEST BANK TO DEBTOR'S EMERGENCY MOTION FOR AN INTERIM ORDER AUTHORIZING USE OF CASH COLLATERAL AND RELATED RELIEF**

Date of Hearing: March 29, 2011
Time of Hearing: 10:00 a.m.

    Secured Creditor East West Bank ("EWB"), by and through its counsel of record, hereby submits is Opposition ("Opposition") to Debtor's Emergency Motion for an Interim Order Authorizing Use of Cash Collateral and Related Relief and Scheduling Final Hearing Pursuant to Federal Rule of Bankruptcy Procedure 4001(b)(2) (the "Motion") [Docket No. 24 in Case No. 11-11249-BAM].

    This Opposition is based upon the following Points and Authorities, the Request for Judicial Notice filed and served concurrently herewith, the pleadings and papers on file herein

/ / /

/ / /

/ / /

/ / /

and any oral argument the Court may receive at the hearing of this matter.

DATED this 25th day of March, 2011.

BROOKS BAUER LLP

/s/Michael R. Brooks, Esq.
Michael R. Brooks, Esq.
Nevada Bar No. 7287
300 S. 4th Street, Suite 815
Las Vegas, NV 89101
Ph (702) 851-1191
Fax (702) 851-1198
Attorneys for East West Bank

## POINTS AND AUTHORITIES

### I. INTRODUCTION

East West Bank ("EWB") is the beneficiary of a Deed of Trust recorded in second position against certain real property owned by Debtor NASDAQ5, LLC ("NASDAQ5"). EWB also holds a perfected security interest in the rents generated by that real property. In the Motion, Debtors seek the Court's authorization to use cash collateral to pay expenses related to Debtors' ongoing business operations and the administration of their bankruptcy actions. However, Debtors' vague and conclusory assertions do not demonstrate they are entitled to the relief they seek. Further, Debtors have not demonstrated the existence of adequate protection of EWB's interests. In particular, Debtors have not shown that they intend to remain preserve EWB's equity position by making payments to the first position deed of trust holder using the cash collateral. As such, the Court should deny the Motion or, in the alternative, impose conditions upon Debtors' use of the cash collateral that will adequately protect the interests of EWB and other secured creditors.

### II. STATEMENT OF FACTS

In or about October 2003, Mr. Chun Leon Chen, Managing Member of NASDAQ5, borrowed $1,270,000.00 from Illinois Mutual Life Insurance Company ("Illinois Mutual") in connection with Mr. Chen's purchase of the real property located at 4480 Spring Mountain Road, Las Vegas, Nevada 89102 (the "Property"). *See*, Request for Judicial Notice in Support of Opposition to Debtor's Emergency Motion for an Interim Order Authorizing Use of Cash Collateral and Related Relief (the "RJN"), Exhibit "A," p. 1-2. Mr. Chen's obligations under the loan from Illinois Mutual were evidenced by a Deed of Trust, Security Agreement, Assignment of Rents and Fixture Filing, which was recorded in first position against the Property on October 29, 2003 (the "First Deed of Trust"). *Id.*

On or about May 26, 2004, Mr. Chen transferred title to the Property to NASDAQ5. *See*, Voluntary Petition, Docket No. 1 in Case No. 11-11252-BAM (the "NASDAQ5 Petition"), Schedule A. In or about March 2007, Mr. Chen entered into a loan agreement with United Commercial Bank ("United Commercial") pursuant to which United Commercial opened a

1  revolving line of credit in an amount not to exceed $2,000,000.00 (the "2007 Loan").
2  Exhibit "B" to RJN, p. 1, 2, 16, 17. The obligations under the 2007 Loan were secured by a
3  Revolving Credit Deed of Trust Security Agreement and Assignment of Rents, which was
4  recorded in second position against the Property on March 30, 2007 (the "Second Deed of
5  Trust"). Exhibit "B" to RJN. To further secure the obligations under the 2007 Loan, NASDAQ5
6  assigned to United Commercial all right, title and interest in the rents generated by the Property.
7  Exhibit "C" to RJN, p. 1-3. The Assignment of Rents was recorded against the Property on
8  March 30, 2007. Exhibit "C" to RJN. In or about November 2008, United Commercial and
9  NASDAQ5 entered into a Modification of Deed of Trust, pursuant to which the Second Deed of
10 Trust was modified to secure a promissory note dated November 25, 2008 in the principal
11 amount of $500,000.00 (the "2008 Loan"). Exhibit "D" to RJN.

12 On June 24, 2010, Federal Deposit Insurance Corporation as Receiver for United
13 Commercial Bank assigned to EWB all beneficial interest in the Second Deed of Trust as well as
14 the notes secured thereby and all other loan documents executed in connection with those notes.
15 Exhibit "E" to RJN. On August 23, 2010, EWB substituted East West Investment, Inc. ("EWI")
16 as the trustee under the Second Deed of Trust. Exhibit "F" to RJN.

17 On August 24, 2010, EWI caused a Notice of Default and Election to Sell Under Deed of
18 Trust (the "Notice of Default") to be recorded against the Property. Exhibit "G" to RJN. The
19 obligations under the 2007 Loan had been breached when the principal sum of $1,072,288.00
20 was not paid when it became due on October 5, 2009. *Id.*, p. 1. The obligations under the 2008
21 Loan had been breached when the installment of principal and interest that became due on
22 December 15, 2009 was not paid. *Id.*

23 On December 3, 2010, EWI caused a Notice of Trustee's Sale to be recorded against the
24 Property, in which notice was given that the Property would be sold at public auction on
25 December 27, 2010. Exhibit "H" to RJN. The sale of the Property was postponed and, on
26 January 28, 2011, NASDAQ5 filed the NASDAQ5 Petition, thereby initiating a Chapter 11
27 bankruptcy case and obtaining the protection of the automatic stay. *See*, NASDAQ5 Petition.

28 **III.   ANALYSIS**

In the Motion, Debtors request the Court authorize Debtors' use of cash collateral to pay ongoing expenses pursuant to Bankruptcy Code § 363. However, Debtors have not provided any accounting of the intended use of the cash collateral or the rents received and applied by Debtors since the initiation of their bankruptcy cases. In addition, Debtors have not satisfied their burden of proof on the issue of adequate protection of the secured interests in the cash collateral Debtors propose to use. As such, the Court should deny the Motion or, in the alternative, impose conditions upon Debtors' use of the cash collateral that will adequately protect EWB's secured interests.

A.   **EWB Holds Perfected Security Interests in the Property and the Rents Generated by the Property.**

At the time NASDAQ5 commenced its bankruptcy case, EWB held a perfected security interest in the Property as well as the rents generated by the Property. As noted above, the Second Deed of Trust and the Assignment of Rents were duly recorded against the Property on March 30, 2007. Exhibits "B" and "C" to RJN. The Second Deed of Trust was recorded in second position against the Property and, therefore, is subordinate to the First Deed of Trust held by Illinois Mutual. Exhibits "A" and "B" to RJN. Although it was recorded in second position, the Second Deed of Trust remains a valid and enforceable lien against the Property.

Further, when the Assignment of Rents was recorded against the Property, the security interest in rents created by that assignment was "fully perfected." NRS § 107A.240(b). Pursuant to the June 2004 Assignment of Deed of Trust, EWB is the holder of all beneficial interest in the Second Deed of Trust as modified by the Modification of Deed of Trust, the notes secured by the Second Deed of Trust, and the Assignment of Rents. Exhibit "E" to RJN.

Finally, Bankruptcy Code § 552(b)(2) states, in pertinent part,

> Except as provided in sections 363, 506(c), 522, 544, 545, 547, and 548 of this title, and notwithstanding section 546(b) of this title, if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to amounts paid as rents of such property..., then such security interest extends to such rents...acquired by the estate after the commencement of the case to the extent provided in such security agreement, except to any extent that the court, after notice and hearing and based on the equities of the case, orders otherwise.

As such, EWB holds a post-petition security interest in all rents that NASDAQ5 receives from the Property.

### B. Debtors Have Not Provided an Accounting of the Intended Use of the Cash Collateral and Have Not Demonstrated They Will Comply with Segregation and Accounting Requirements.

Debtors request the Court grant them "the authority to use cash collateral to pay all ongoing ordinary course administrative expense obligations incurred in the operation of the Debtor's [*sic*] ongoing business operations and administration of this Chapter 11 case." Motion at 3:23-25. However, Debtors have not provided any competent evidence of their intended use of cash collateral and have not demonstrated they will comply with the Bankruptcy Code requirements to segregate and account for their use of cash collateral. Therefore, the Motion should be denied.

Bankruptcy Code § 363(a) defines the term "cash collateral" as,

> …cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property…subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title.

As such, the cash collateral Debtors seek to use includes the rents generated by the Property, in which EWB holds a post-petition security interest.

Debtors describe the expenses to be paid through the use of cash collateral as "ongoing utilities and regular business expenses" including, but not limited to, "payroll, utilities, property costs, insurance, repairs and maintenance, professional fees and expenses, and similar charges and expenses." *See*, Declaration of Chun Leon Chen Filed Concurrently and in Support of First Day Motions (the "Chen Declaration"), Docket No. 30 in Case No. 11-11249-BAM, ¶¶ 39, 40. Debtors assert their 2011 rental revenue through February 15, 2011 was approximately $61,009.47. *Id.*, ¶¶ 18, 35. However, Debtors have not provided any documentation or data to evidence that assertion. Further, Debtors have failed to submit any budget or similar accounting device detailing the amounts and timing of payments Debtors propose make from the cash

collateral.

Finally, Debtors have not demonstrated that their finances are segregated or that Debtors have properly accounted for the rents being generated by Debtors' real property assets. Bankruptcy Code § 363(c)(4) states, "[e]xcept as provided in paragraph (2) of this subsection, the trustee shall segregate and account for any cash collateral in the trustee's possession, custody, or control." However, the Motion and Chen Declaration are devoid of any indication that Debtors have segregated the cash collateral they wish to use. Debtors have not provided a breakdown of their rental revenue by debtor or by real property. The Motion and Chen Declaration are also devoid of any assurance that Debtors will segregate and account for the cash collateral in compliance with the Bankruptcy Code.

Rather than demonstrating Debtors' intention and ability to segregate and account for all cash collateral used, the documents on file in Debtors' bankruptcy actions evidence a lack of such segregation and accounting. The Motion and Chen Declaration refer to "Debtor" and "Debtors" interchangeably. *See, e.g.,* Motion at ¶ 11 ("Debtor has ongoing monthly obligations"), ¶ 12 ("Debtors anticipate that by reorganizing its [*sic*] operations"), ¶ 15 ("Debtor's rental revenue…is approximately $61,009.47"), ¶ 17 ("Provided Debtor's business operations continue as planned…preserve the Debtors' estate"), ¶ 18 ("in the event Debtors' business operations do not remain ongoing"). *See also,* Chen Declaration at ¶¶ 12, 31 ("Debtors have tenants at these properties"), ¶¶ 14, 33 ("Debtor has ongoing monthly obligations"), ¶¶ 17, 34 ("As Debtor's Profit and Loss Statements show, Debtors [*sic*] had substantial revenues").

Debtors' schedules also evidence a lack of segregation and proper accounting of Debtors' assets. Debtors filed their voluntary petitions, including summaries of schedules and schedules of personal property assets, on January 28, 2011. *See,* NASDAQ5 Petition; Voluntary Petition, Docket No. 1 in Case No. 11-11249-BAM (the "NICK3 Petition"); and Voluntary Petition, Docket No. 1 in Case No. 11-11253-BAM (the "ALEC4 Petition"). At the time the petitions were filed, NASDAQ5 asserted its personal property assets included $88,617.06 in Accounts Receivables – Rents and $253,698.20 in Outstanding Business Accounts Receivables. NASDAQ5 Petition, Schedule B. In an amended scheduled filed on March 24, 2011,

NASDAQ5 stated its personal property assets had decreased to $28,720.83 in Accounts Receivables – Rents and $6,944.11 in Outstanding Business Accounts Receivables. *See*, Docket No. 26 in Case No. 11-11252-BAM ("NASDAQ5 Amended Schedule B"). The figures contained in the NASDAQ5 Amended Schedule B demonstrate a decrease of more than 67% in NASDAQ5's "Rents" receivables and a decrease of more than 97% in its other receivables in less than two months time.

Debtors NICK3, LLC ("NICK3") and ALEC4, LLC ("ALEC4") have filed amended schedules that demonstrate similar decreases in their personal property assets. *See*, NICK3 Petition and Docket No. 26 in Case No. 11-11249-BAM and ALEC4 Petition and Docket No. 24 in Case No. 11-11253-BAM. NICK3's amended schedules evidence a decrease of more than 84% in NICK3's "Rents" receivables and a decrease of more than 80% in its other receivables. *See*, NICK3 Petition and Docket No. 26 in Case No. 11-11249-BAM. ALEC4's amended schedules reveal an increase of more than 30% in its "Rents" receivables, but a decrease of more than 91% in its other receivables. *See*, ALEC4 Petition and Docket No. 24 in Case No. 11-11253-BAM.

Yet, despite the significant decreases in Debtors' reported receivables, Debtors did not amend any other personal property asset information. In other words, Debtors have not reported any increase in assets related to the decrease in receivables. At best, Debtors' initial figures regarding their receivables, including rents, were inaccurate and highly inflated. Of more concern is the possibility that Debtors have received and expended cash collateral without creditor consent or Court approval as required under Bankruptcy Code § 363(c)(2). The Motion requests a temporary authorization to use cash collateral and refers to an Interim Order, designated as Exhibit "1." Motion at 1 and 9. However, no Interim Order was attached to the Motion and the Court has not entered any order authorizing the use of cash collateral.

Even if Debtors have not used cash collateral without authorization, the wide disparities in Debtors' original and amended personal property schedules demonstrate a lack of proper accounting and/or oversight of Debtors' assets. Debtors have not provided any accounting of the cash collateral they seek to use or the sources of that cash collateral. Debtors have also not

demonstrated that the cash collateral they wish to use has been properly accounted for or segregated. Therefore, the Court should deny the Motion.

C. **Debtors Have Not Satisfied Their Burden to Demonstrate EWB's Security Interest Is Adequately Protected.**

Bankruptcy Code § 363(e) provides, in pertinent part,

> Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest.

As demonstrated above, EWB holds a duly perfected security interest in the Property and the rents generated by the Property. Therefore, EWB is entitled to adequate protection of that interest. As the Supreme Court of the United States has stated,

> Although Congress might have safeguarded the interests of secured creditors outright by excluding from the estate any property subject to a secured interest, it chose instead to include such property in the estate and to provide secured creditors with "adequate protection" for their interests....At the secured creditor's insistence, the bankruptcy court must place such limits or conditions on the trustee's power to sell, use, or lease property as are necessary to protect the creditor. The creditor with a secured interest in property included in the estate must look to this provision for protection, rather than to the nonbankruptcy remedy of possession.

*United States v. Whiting Pools, Inc.*, 462 U.S. 198, 203-04, 103 S.Ct. 2309, 2313 (citation omitted).

Pursuant to Bankruptcy Code § 363(p)(1), the trustee or debtor in possession "has the burden of proof on the issue of adequate protection." With respect to adequate protection, Bankruptcy Code § 361 states,

> When adequate protection is required under section 362, 363, or 364 of this title of an interest of an entity in property, such adequate protection may be provided by –
>
> (1) requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the stay under section 362 of this title, use, sale or lease under section 363 of this title, or any grant of a lien under section 364 of this title results in a decrease in the value of such entity's interest in such property;
>
> (2) providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of such entity's interest in such property; or

(3) granting such other relief, other than entitling such entity to compensation allowable under section 503(b)(1) of this title as an administrative expense, as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

In this case, Debtors' Motion does not satisfy the burden that Debtors must demonstrate EWB's secured interest is adequately protected. Rather, Debtors merely state,

> The Debtors propose as and for adequate protection for their use of cash collateral that: (i) the use of cash collateral will first fund the expenses of preserving, maintaining and operating the real properties subject to a claim of cash collateral for the benefit of Cash Collateral Creditors, as defined below; (ii) the use of cash collateral is subject to the Operating Projections and thus the Cash Collateral Creditors, as defined below, are provided adequate protection in knowing the purpose and amount of the cash collateral's use; and (iii) it appears to the Debtors that the value of the secured creditors' interest in cash collateral will not be diminished by such use, or through the passage of time.

Chen Declaration, ¶ 42. However, the terms "Cash Collateral Creditors" and "Operating Projections" are not defined in Debtors' moving papers. In addition, as shown above, Debtors have not submitted any data regarding the cash collateral they hope to use or the amount and timing of any payments they plan to make with the cash collateral. Most importantly, there is no evidence presented that EWB's equity position will be preserved by the payments to the first deed of trust holder. As such, EWB cannot determine the amount(s) or source(s) of the cash collateral addressed in the Motion. In addition, Debtors have not submitted any projections of any type that would allow EWB to evaluate the purported limits on Debtors' use of the cash collateral. Finally, Debtors' assertion that it "appears" or seems to them that EWB's secured interest will not be diminished is not supported by any competent evidence of the value of the Property or the rents generated by the Property. Because Debtors have not demonstrated that adequate protection is being provided, the Court should deny the Motion.

///
///
///
///
///
///

IV. **CONCLUSION**

For the above and foregoing reasons, Secured Creditor East West Bank respectfully requests the Court deny Debtors' Motion or, in the alternative, impose conditions on Debtors' use of the cash collateral that will adequately protect East West Bank's interests.

DATED this 25th day of March, 2011.

                BROOKS BAUER LLP

                /s/Michael R. Brooks, Esq.
                Michael R. Brooks, Esq., Nevada Bar No. 7287
                300 S. 4th Street, Suite 815
                Las Vegas, NV 89101
                Ph (702) 851-1191
                Attorneys for East West Bank

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that I am employed in the County of Clark, State of Nevada, am over the age of 18 years and not a party to this action. My business address is that of Brooks Bauer LLP, 300 S. 4th Street, Suite 815, Las Vegas, Nevada 89101.

This is to certify that on March 25, 2011, I electronically filed the **OPPOSITION OF EAST WEST BANK TO DEBTOR'S EMERGENCY MOTION FOR AN INTERIM ORDER AUTHORIZING USE OF CASH COLLATERAL AND RELATED RELIEF** with the Clerk of the Court using the CM/ECF system. Filing the document using the CM/ECF system will cause electronic service of the document on the parties in said action or proceeding through the Notice of Electronic Filing to the following: *See*, Master Service List.

I certify under penalty of perjury that the foregoing is true and correct and that this Certificate of Service was executed by me on the 25th day of March, 2011 at Las Vegas, NV.

*/s/Jill M. Sallade*
An Employee of BROOKS BAUER LLP